**TIME OIL CO., a corporation, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 16534.

United States Court of Appeals Ninth Circuit.

Sept. 1, 1961.

Jones, Grey, Kehoe, Hooper & Olsen, Seattle, Wash., A. R. Kehoe and Hargrave A. Garrison, Seattle, Wash., for petitioner.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney and Helen A. Buckley, Attorneys, Dept. of Justice, Washington, D. C., for respondent.

Before CHAMBERS, STEPHENS and POPE, Circuit Judges.

CHAMBERS, Circuit Judge.

Reference is here made to this court's decision in Time Oil Co. v. Commissioner, 258 F.2d 237, decided the first time the case was here. This opinion starts from there.

The taxpayer almost lost its income tax deductions for its contributions to a stock bonus and profit sharing plan for its employees because of some deviations from the original written plan. However, we held the deviations were de minimis and declined to sustain the Commissioner in his contentions that the departures from plan were fatal.

There was a second issue in the first case: In what years were the payments deductible? This arose because notes were given by the taxpayer to the trust in payment of its obligation to make contributions. When here before, the Commissioner contended the year of payment of a note was the year for the deduction. There is much to be said for this position, but we determined not to set up a conflict with the Third Circuit, which had held that delivery of the note fixed the time. Sachs v. Commissioner, 3 Cir., 208 F.2d 313.

Specifically we said:

"After taking the view of the law hereinabove indicated, this court must now come to the question of the year of deductibility of the employer's payments. The Third Circuit has taken the view that a taxpayer on an accrual basis is entitled to deduct promissory notes as a contribution in the year issued. Sachs v. Commissioner (Slaymaker Lock Co. v. Commissioner) 3 Cir., 208 F.2d 313. This court fully agrees with the case of Anthony P. Miller, Inc. v. C.I.R., 3 Cir., 164 F.2d 268, 4 A.L.R. 2d 1219 (on its facts) upon which the Court of Appeals for the Third Circuit relies in Sachs and Slaymaker. Under Section 23(p) (1) (E) of the 1939 Code, 26 U.S.C.A. § 23 (p) (1) (E) a taxpayer 'on the accrual basis shall be deemed to have made a payment on the last day of the year of accrual if the payment is on account of such taxable year and is made within sixty days after the close of the taxable year.' The Sachs-Slaymaker decision is a reasonable, but not a required, extension of the Miller case. The point is a close one. In such circumstances it seems unnecessary to set up a conflict between circuits. Therefore, it is held that delivery of the notes to the trustee constituted payment by Time Oil Company as of the delivery date. This would determine the year of deductibility.

"In the background of this case is the question of amounts allowable as deductions under permissible limits of the statute. It would appear that under the principles laid down the allowable deductions can be readily calculated by the tax court for the years in which the note obligations were *discharged*." (Emphasis added currently.) [258 F.2d 239.]

The use of the last word "discharged" has produced at least a part of the trouble. And on remand taxpayer sought to take advantage of "discharged." This it sought to do because, on account of limitations of time, it asserts it cannot get its deduction back into 1948, when it delivered to the trustees in the month of May of that year a note for $30,466.86, which was ultimately paid April 20, 1949.[1] The note was to meet obligations

---

1. Taxpayer's taxable years were his calendar years. Thus the 1948 note has presented no 60-day point under Section

23(p) (1) (E) Internal Revenue Code of 1939, providing,

" * * * [A] taxpayer on the accrual basis shall be deemed to have made a

to the fund which arose during the year 1947. Taxpayer's books were on an accrual basis.

Also involved in "what year?" is a note issued, dated and delivered February 28, 1949, by the taxpayer for the 1948 contribution to the trustees. The note was in the amount of $66,342.82 and was paid and discharged August 8, 1950. For this, as well as the $30,466.86 note, the taxpayer, in its computation submitted to the tax court, claimed deductibility as an expense in the year 1949. Notice that it does not argue that the larger note must be deducted in 1950,[2] the year of payment of the note, or in 1948 (by virtue of delivery on February 28, 1949, within the 60-day grace period on 1948 of Section 23(p) (1) (E) of the Internal Revenue Code of 1939). The latter, it argues against.

It was clear enough to the tax court that our use of the word "discharged," in concluding our former opinion, was an inadvertence. And we so hold. This being the same panel, our holding can be a matter of fact rather than surmise.

But for the unfortunate use of the word "discharged," taxpayer would have little to argue about, and we could now simply say that the law of the case was established on the prior appeal.

The taxpayer claims "estoppel" and points out that, when it was here before, the Commissioner took the view that the year of payment (rather than delivery) of such notes as we have here was crucial.[3] But we decided otherwise.

As a general proposition taxpayers may report income on a cash receipts ba-sis or on an accrual basis, depending on how the books are kept. See Section 441 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 441. But of course on either basis some accounting concepts vary from accountant to accountant. And at a number of points specific sections of the Revenue Code upset normal accounting concepts, presumably as a matter of public policy, and so upset for tax purposes such accounting.[4]

Obviously, under 23(p) as it came into the revenue law under Section 162(b) of the Revenue Act of 1942, c. 619, 56 Stat. 798, it was thought advisable, before deduction was made, to require that there be something more than a book credit on the taxpayer's books. This, one may surmise, was for the benefit of employees, beneficiaries of the plan.

Of course, it is open to any taxpayer to "pay" all or part of the contribution within the taxable year. Such was just what happened in Sachs v. Commissioner (Slaymaker v. Commissioner), 3 Cir., 208 F.2d 313, upon which this court based its first decision herein. (Payment was by notes and the notes were discharged more than 60 days after the end of the taxable year.)

But where the contributions are a percentage of profits it is difficult to ascertain before the end of the year what one's profits are. So in the statute a compromise was made with the accrual system under which supposedly the majority of larger business concerns operate. Thus, we have Section 23(p) (1) (E).

payment on the last day of the year of accrual if the payment is on account of such taxable year and is made within sixty days after the close of the taxable year of accrual."

2. In referring to our inadvertent use of the word "discharge" the petitioner does say, "The use of the word 'discharged' would clearly indicate a deduction at the time of payment of the note if deduction had not been allowed at the time the note was issued." But it is elsewhere in its brief, as well as on remand in the tax court, that it claims 1949 as the tax year

of deductibility for the sixty-six thousand dollar note.

3. Taxpayer originally, on his return, claimed the 1948 note described supra to be deductible in 1947, the year the obligation to the trust fund arose.

4. For example under Section 24 of the 1939 Code, 26 U.S.C.A. § 24, now part of Section 267 of the 1954 Code, 26 U.S.C.A. § 267, payments between those closely related by blood or law to the taxpayer must be paid within two and one-half months after the close of a taxable year if deduction is claimed for the year reported.

There may be valid argument that we should not have followed Slaymaker and Sachs, supra, and should have required a cash payment instead of holding that delivery of a negotiable promissory note is a payment. (Obviously our holding as made would require that such a note would be payment for a cash-basis taxpayer, too.) But 23(p) (1) (E) says a taxpayer on an accrual basis "*shall* be deemed to have made a payment on the last day of the year of accrual if the payment is on account of such taxable year and is made within sixty days after the close of the taxable year of accrual." (Emphasis added.) In the law "shall" is often bent to say "may," and if that were done here we could say the taxpayer's note for $66,342.82, delivered on February 28, 1949, at the taxpayer's option, could be taken as either for the taxable year 1948 or for the year 1949, because it was delivered in 1949. Taxpayers really do not need that option, and we find no support in the statutory history for it. All they need to know is what the law is. When they know that, they can control the date of the cash payment or delivery of the note. They then can honestly make the facts. (To give the option of either 1948 or 1949 would be giving a second choice to an accrual taxpayer not given to a cash-basis taxpayer.)

Assuming the policy that "payment" is required for a deduction, once he knows the law, a taxpayer has a lot of room for maneuver. He can pay up as late as 60 days after the close of the taxable year (now, under Section 404 of the 1954 Code, 26 U.S.C.A. § 404, until the date the return is filed, or the time of an extension), or he can make the payment, if his agreement permits, after the grace period is gone.

But it is no wonder the taxpayer did not know the law (and the courts have trouble with it) when Section 23(p) (1) commences with the following language:

"(1) General rule.—If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on ac-count of any employee under a plan deferring the receipt of such compensation, *such contributions or compensation, shall not be deductible under subsection (a) but shall be deductible, if deductible under subsection (a) without regard to this subsection, under this subsection but only to the following extent:*" (Emphasis supplied.)

To indulge in a bit of whimsy, one may wonder how the government could ever fasten on a taxpayer the wilfully wilful intent to violate the law we required in the felony case of tax evasions of Forster v. United States, 9 Cir., 237 F.2d 617, if somehow a tax evasion charge could be bottomed on a violation involving in some way Section 23(p) (1) (E).

Here we can do nothing for the taxpayer. But with candor the Commissioner suggests the taxpayer possibly may be entitled to some relief under Sections 1311–1315, Internal Revenue Code of 1954, 26 U.S.C.A. §§ 1311–1315. He does not concede it. While we do not announce that taxpayer must be relieved under those sections, we do think in the circumstances of this case there is a lot of equity in that position. (Consideration of those sections by us now would be premature.) The law shouldn't be, if it is, that the taxpayer is to be hung from the limb of the wrong year—when there was no sure way of finding the limb until the courts could put their mark on it. See Dubuque Packing Co. v. United States, D.C., 126 F.Supp. 796, at pages 804, 805.

The decision of the tax court under our mandate is affirmed.

STEPHENS, Circuit Judge (concurring).

The question before the court is whether the Tax Court acted correctly in excluding as deductible items for the year 1949 two promissory notes, representing contributions to a stock bonus and profit sharing trust.

The first note in question, for $30,466.-86, was delivered to the trustee in May of 1948 and presents no problem. Our

first opinion in this matter decided, inter alia, that the delivery of the note determined the date in which the contribution was deemed to be paid. Accordingly, the Tax Court correctly determined that as to this note 1948 was the proper year in which the deduction should have been taken.

The second note presents a real issue. This note was delivered to the trustee on February 28, 1949. Section 23(p) (1), Internal Revenue Code of 1939, provides:

"(1) General rule.—If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan * * * such contributions * * * shall not be deductible under subsection (a) [ordinary and necessary business expenses] but shall be deductible, if deductible under subsection (a) without regard to this subsection, under this subsection but only to the following extent:"

Limitations then follow under subparagraphs (A), (B), (C), and (D), each, inter alia, requiring actual payment during the taxable year. There then follows subparagraph (E):

"For the purposes of subparagraphs (A), (B), and (C), a taxpayer on the accrual basis shall be deemed to have made a payment on the last day of the year of accrual if the payment is on account of such taxable year and is made within sixty days after the close of the taxable year of accrual."

Treasury Regulations 111, promulgated under the Internal Revenue Code of 1939, Section 29.23(p)–1, states in part:

"Deductions under section 23(p) are generally allowable only for the year for which the contribution or compensation is paid, regardless of the fact that the taxpayer may make his return on the accrual basis. Exceptions are made * * * as provided by section 23(p) (1) (E), in the case of payments made by a taxpayer on the accrual basis within 60 days after the close of the taxable

year of accrual. This latter provision is intended to *permit* a taxpayer on the accrual basis to deduct such accrued contribution or compensation, provided payment is actually made within 60 days after the close of the year of accrual." (Emphasis supplied.)

There is at once apparent an ambiguity as between the statute and the regulation. While the former is phrased in mandatory terms, the latter is permissive in tone. The Tax Court appears not to have considered the matter. Petitioner has seized upon the difference in statute and regulation in challenging the Tax Court's ruling. The contention of respondent, accepted by the Tax Court, is that the note for $66,342.82, being delivered within 60 days of the end of the year of accrual (1948), to the extent of $42,347.54 (the maximum which can be allocated to the year 1948 under the limitation of 15% of the aggregate compensation of eligible employees) must be charged to that year. Petitioner, with his eye on the regulation, claims that the year of payment is permissive rather than mandatory. Therefore, contends petitioner, at his option, the note can be charged to 1949, the year of delivery, even though such delivery was made within 60 days of the close of the taxable year of 1948 and was on the account of that year. If in his contention petitioner is correct, the computation of taxes owing for 1949 and 1950 accepted by the Tax Court is clearly in need of revision.

The authorities are silent as to the problem of construction which is presented. The American Law Institute, "Basic Pension and Profit Sharing Plans" (June, 1957), page 17, in discussing the counterpart of section 23(p) (1) (E) in the 1954 Code, states:

" * * * an accrual basis taxpayer *may* accrue a contribution as of the last day of the employer's taxable year and deduct the contribution, subject to the applicable limitations as to amount, if it is actually paid by the due date for filing the employer's tax returns for the tax-

able year. Before the 1954 Code the accrued contribution had to be paid within 60 days after the end of the taxable year." (Emphasis supplied.)

The above language is couched in permissive terms, but again, there is ambiguity. There is no statement that taxpayers have an option in the matter; merely that they have 60 more days in which to make payment than taxpayers on a cash basis. 4 Mertens, Law of Federal Income Taxation, sec. 25B.29 terms the sixty day period a "grace period." This description suggests that an accrual basis taxpayer is given extra time, a period of "grace," in which to determine the amount of his contribution and make payment thereof. Other references are unenlightening as to the issue presented. The Legislative History is completely silent upon the question of whether section 23(p) (1) (E) is permissive or mandatory.

The sixty day period bestowed by section 23(p) (1) (E) is given without regard to the nature or size of the business involved, but solely upon the nature of the accounting system employed. The "grace" period is not available to the cash basis taxpayer. The reason for the difference in treatment must be found in the difference in accounting systems. The distinction between the two lies in the comparative availability of financial data. Very simply, the accrual basis taxpayer was thought to need more time to dig out the necessary information upon which to determine the amount of his contribution. Sixty days was apparently thought to be a reasonable time for this purpose. Having determined the amount of his contribution, the accrual basis taxpayer was allowed to relate the payment back to the year in which it arose (as is required by the other subparagraphs of section 23(p) (1)), matching the expense with the income from the same period.

If the foregoing analysis is correct, then the connotation of option for which petitioner seeks acceptance has no rational foundation. The statute was not intended to allow accrual basis taxpayers to choose their year, but merely to accommodate the type of accounting system which they employed.

The weakness of petitioner's contention is made more apparent by the change made in section 23(p) (1) (E) under the 1954 Code. By the new Code, the sixty day period has been extended to the due date for filing the employer's tax return. The section is otherwise unchanged. Currently, taking a calendar year taxpayer, this means that an accrued payment would not have to be paid before April 15 in the case of a noncorporate taxpayer, or March 15 in the case of a corporate taxpayer. By these dates outer limits are set for both the payment of taxes for the previous year and also the relating back to such year the kind of payments here under discussion. In each instance the accrual basis taxpayer must have the required information to perform the necessary acts. This is not to say that the taxpayer can't pay sooner, it is simply bounds beyond which, in the absence of a special grant of extension, he cannot go. On the other hand, should petitioner's position be adopted, under the 1954 Code a non-corporate accrual basis taxpayer could at his leisure, up to April 15, choose the year in which to take the deduction for his contribution. There is no apparent reason why Congress should so discriminate between taxpayers simply on the basis of their accounting systems. In the absence of such reason, we return to the clear command of the statute, that "a taxpayer on the accrual basis shall be deemed to have made a payment on the last day of the year of accrual if the payment is on account of such taxable year and is made within sixty days after the close of the taxable year of accrual." The statute in question is properly construed as mandatory. Unless, then, there exists some other reason for allowing the deduction of the note in 1949, it must be considered as having been an allowable deduction only in 1948.

Petitioner asserts that such reason exists, by way of estoppel. This contention

requires further discussion of the facts. It appears that originally petitioner attempted to take the note in question as a deduction for the year 1948. Respondent disallowed this as a deduction, presumably for the reason that, prior to our previous decision, he believed delivery of the note not to be payment thereof. We decided otherwise. Retrospectively, it now appears that petitioner's original claim was entirely proper. His problem now is that 1948 is a year barred by the statute of limitations, and he is thus denied any benefits from his contribution with respect to that year. He thus claims estoppel in that respondent denied the deduction in the first place and now wishes to relate the payments back to the barred year. These facts are true enough, but whether they give rise to an estoppel is another matter.

In the first place this doctrine is not lightly applied against the government. If applied at all, it will be done sparingly and with the utmost caution. Goldstein v. United States, 8 Cir., 1955, 227 F.2d 1. This is because its application in any case "would result in having individual tax liability depend, not upon factors prescribed by Congress as applicable to all, but upon the statements and conduct of a particular Government officer in respect of each individual." James Couzens, 11 B.T.A. 1040. One case, Stockstrom v. Commissioner, 1951, 88 U.S.App.D.C. 286, 190 F.2d 283, 30 A.L.R.2d 443, which liberally applied estoppel against the Government was disapproved by the Supreme Court in Automobile Club of Michigan v. Commissioner, 1956, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746, to the extent that it held estoppel a bar to the correction by the Commissioner of a mistake of law. Respondent's error here was apparently that mere delivery of the note to the trustee was not sufficient for payment of the obligation thereby incurred as a matter of law. The Commissioner is not estopped, and indeed would be derelict if he did not choose the position which he now takes. There was no fault, but a need for clarification in the law only now resolved.

POPE, Circuit Judge (dissenting).

My disagreement is upon a point neither mentioned nor discussed by the Tax Court. It does not concern the 1948 ($30,466.86) note. But with respect to the $66,342.82 note, which was delivered in February, 1949, if the statute should be construed as I think it should, the admittedly unfair and unjust result reached in the opinion here would at least in part be avoided.

The section here in question reads: "(E) For the purposes of subparagraphs (A), (B), and (C), a taxpayer on the accrual basis shall be deemed to have made a payment on the last day of the year of accrual if the payment is on account of such taxable year and is made within sixty days after the close of the taxable year of accrual." (1939 I.R.C., 26 U.S.C. § 23(p) (1) (E).)

The Tax Court assumed, without bothering to discuss the matter, that this section required and made it mandatory, that the taxpayer, which was on the accrual basis, *must* treat the contribution as having been made on the last day of the preceding year simply because it was made within 60 days after the taxable year.

Petitioner asserts that the quoted provision is permissive and not mandatory. If petitioner is right in this, it should be permitted to deduct the whole amount of $66,342.82 in 1949, the year in which it was paid.

I think the provision is properly construed as permissive and that the whole purpose of the enactment as well as the Regulations all point in that direction; and I think any different construction renders the whole business absurd.

It is true the section uses the word "shall"; but it is elementary that this word does not always import "must"; often it is to be read as "may". Richbourg Motor Co. v. United States, 281 U.S. 528, 534, 50 S.Ct. 385, 74 L.Ed. 1016; West Wisconsin Ry. Co. v. Foley, 94 U.S. 100, 103, 24 L.Ed. 71; Cairo, & F. Railroad Co. v. Hecht, 95 U.S. 168,

24 L.Ed. 423; First Western Savings and Loan Ass'n v. Anderson, 9 Cir., 252 F.2d 544, 548. Here the Regulations on the section are couched in words of permissiveness. They provide: "(d) Deductions under § 23(p) are generally allowable only for the year for which the contribution or compensation is paid, regardless of the fact that the taxpayer may make his return on the accrual basis. Exceptions are made in the case of overpayments as provided in subparagraphs (A), (C), and (F) of § 23(p) (1), and as provided by § 23(p) (1) (E), in the case of payments made by a taxpayer on the accrual basis within 60 days after the close of the taxable year of accrual. This latter provision is intended to *permit* a taxpayer on the accrual basis to deduct such accrued contribution or compensation, provided payment is actually made within 60 days after the close of the year of accrual." [Regs. 111 § 29.23 (p)–1 and Regs. 118 § 39.23(p)–1(d)]. (Emphasis mine.)[1]

As noted in Mertens "Law of Federal Income Taxation" (Zimet and Diamond Revision) §§ 25 B.28 and 25 B.29, this section provides for an exception to the general rule that the deduction must be taken in the year of payment. The section gives in the case of these accrual method employers what Mertens calls a "grace period". It is a common rule that where a statute makes that legal and possible which otherwise there would be no authority to do, it will be construed as permissive only, although using the word "shall".[2]

What makes the Commissioner's construction seem absurd to me is that according to the Commissioner if a calendar year taxpayer made payment on March 1 of an ordinary year (the 60th day) this payment *must* be deemed made in the preceding year; but if the same taxpayer made his payment on March 2, then it is only deductible in the year when paid. Such is the ruling of the Bureau (Rev.Rul. 57–378, 1957–2 Cum. Bull. 268), with respect to the 1954 Revenue Code's similar provision.[3]

No legislative history relating to the initial insertion of this language in the Revenue Code is available to aid us in determining just why Congress added this section. But I can perceive no conceivable object to be obtained by *compelling* the taking of such a deduction in the preceding year. But if, as Mertens suggests in referring to this as a "grace period", the purpose was to *permit* the taxpayer to take the deduction in the preceding year, then the enactment appears to have had a reasonable objective.

Judge STEPHENS' opinion, I think, makes more manifest the correctness of my position. After noting that there is no legislative history to aid in the problem of construction here involved, that opinion proceeds to assume the existence of some legislative history or rationale. Says the opinion: "Very simply, the accrual basis taxpayer was *thought* to need more time to dig out the necessary information. * * * Sixty days was apparently *thought* to be a reasonable time for this purpose." (Emphasis mine.) There is no indication as to who "thought" this. Neither Congress nor any committee of Congress ever expressed any such thought; quite the contrary as I shall show.

What this opinion has sought to do is to evolve some equitable considerations supposed to have been in the mind of

---

1. A ruling referring to this section, Rev. Rul. 56–366, 1956–2 Cum.Bull. 976, refers to the section by saying: " * * * as provided by section 23(p) (1) (E) of the Code, a taxpayer on the accrual basis *may* make payment within 60 days after the close of the taxable year of accrual."

2. See cases cited in 82 C.J.S. Statutes § 380, p. 881, footnote 15.

3. This is Title 26, Sec. 404(a) (6) in which the language is identical with that of the above quoted section except that the final two lines, referring to the time of payment read: " * * * is made not later than the time prescribed by law for filing the return for such taxable year (including extensions thereof)."

Congress. But the Supreme Court had told us, in no uncertain terms, that such an approach to determination of the Congressional intent is not permissible in income tax cases. This is a prime case for remembering that "general equitable considerations do not control the measure of deductions or tax benefits." Lewyt Corp. v. Commissioner, 349 U.S. 237, 240, 75 S.Ct. 736, 739, 99 L.Ed. 1029. As the Court there held, what controls is the "statutory language". The statutory language is plain. It is found in the repetition, again and again, in Section 23(p) (1) of the 1939 Code, of the positive provision: "In the taxable year when paid". Thus start subdivisions (A), (B), (C) and (D). By this language the year of payment is named as the time for deduction in every case and in respect to every taxpayer. The year of accrual is immaterial and irrelevant. This was noted by the Court of Claims in the case of Russell Manufacturing Company v. United States, 175 F.Supp. 159, 162, as follows: "As to the amounts of compensation which merely *accrued* in the fiscal year 1945, a deduction could not be allowed in that year in the face of a clear statutory provision that such compensation shall be deductible only in the taxable year when 'paid'."

As noted in the Regulation quoted above, this is the year of deduction "regardless of the fact that the taxpayer may make his return on the accrual basis."

That Congress meant what it said when it used the words "In the taxable year when paid", and that this referred both to cash and accrual basis taxpayers, without distinction, is plain from the language used in subdivision (i) under 23 (p) (1) (A).[4] Note the limitation to "5 per centum of the compensation otherwise paid or accrued during the taxable year". Similar reference to accrual basis taxpayers is made in subsections (C) and (F). Thus all these paragraphs refer to both cash and accrual basis taxpayers, yet the deductions allowed are not of contributions "accrued". They are in every case deductions of amounts "paid", and "in the taxable year when paid". If it were otherwise, these paragraphs would have stated "in the taxable year when paid or accrued".

I find no justification whatever for Judge Stephens' statement that "the reason for the difference in treatment must be found in the difference in accounting systems." Congress plainly made the "taxable year when paid" the period for deduction without regard to accounting systems. The sole effect of subparagraph (E) was to give the accrual basis taxpayer an optional grace period, just as the Regulations quoted above make clear.

I would reverse and remand with directions to permit the deduction of the entire $66,342.82 in 1949, the year of its payment which, as we previously held, was by delivery of this note.

4. 23(p) (1) (A) through (i) is as follows: "In the taxable year when paid, if the contributions are paid into a pension trust, and if such taxable year ends within or with a taxable year of the trust for which the trust is exempt under section 165(a), in an amount determined as follows: (i) an amount not in excess of 5 per centum of the compensation otherwise paid or accrued during the taxable year to all the employees under the trust, but such amount may be reduced for future years if found by the Commissioner upon periodical examinations at not less than five-year intervals to be more than the amount reasonably necessary to provide the remaining unfunded cost of past and current service credits of all employees under the plan, * * *."